UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JONATHAN E. KIEFEL,           :
                              :CIVIL ACTION NO. 3:17-CV-1376
          Plaintiff,          :
                              :(JUDGE CONABOY)
          v.                  :
                              :
NANCY A. BERRYHILL,           :
Acting Commissioner of        :
Social Security,              :
                              :
          Defendant.          :
                              :

_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. (Doc. 1.) Plaintiff protectively filed applications on December 21, 2011, alleging disability beginning on December 1, 2011. (Doc. 9 at 1.) After he appealed the initial February 29, 2012, denial of the claims, a hearing was held on December 13, 2012, and Administrative Law Judge ("ALJ") Therese Hardiman issued her Decision on March 20, 2013, concluding that Plaintiff had not been under a disability during the relevant time period. (*Id.* at 2.) Plaintiff requested review of the ALJ's decision which the Appeals Council granted and subsequently remanded the matter to the ALJ for further consideration. (*Id.*; R. 29.)

Upon remand, ALJ Hardiman considered additional evidence and held another hearing on April 2, 2015. (R. 29.) She issued her

decision on November 3, 2015, in which she concluded that Plaintiff had not been under a disability within the meaning of the Act from December 1, 2011, through the date of the decision. (R. 49.) Plaintiff sought review of the decision which the Appeals Council denied on March 6, 2017. (R. 1-6, 23-25.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on August 3, 2017. (Doc. 1.) He asserts in his supporting brief that the Acting Commissioner's determination is error for the following reasons: 1) the ALJ did not comply with the Appeals Council's order directing her to obtain evidence from a medical expert; and 2) the ALJ's conclusion that Plaintiff had no severe impairment or combination of impairments is not supported by substantial evidence. (Doc. 9 at 24.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly granted.

## I. Background

Plaintiff was twenty-seven years old on the alleged onset date of December 1, 2011. (Doc. 9 at 3.) He has a high school education and completed one year of community college. (*Id.*) At the time of his second hearing he was working at McDonald's approximately fourteen hours per week on three to four-hour shifts. (*Id.*) He also has past work experience as a painter/helper/prep person at an auto body shop. (*Id.* at 3-4.) Plaintiff alleges that his inability to work is limited by ankylosing spondylytis,

2

scoliosis, Chrohn's disease, an inability to
sleep/stand/sit/bend/squat/turn at the waist, and severe stiffness
in his joints and ankles.  (R. 264.)

## A. Medical Evidence

Plaintiff's claimed errors relate to specific evidence of
record related to certain physical impairments.  The Court's review
will focus on the relevant evidence relied upon by the parties and
the ALJ.

By way of history, Plaintiff was diagnosed with Crohn's
disease with inflammatory bowel disease in 1996.  (R. 332, 583.)
He was diagnosed with ankylosing spondylitis in 2002.  (R. 583.)

In the year before his alleged onset date of December 1, 2011,
Plaintiff was seen several times by rheumatologist, James W. Ross,
M.D.  At his initial visit on March 2, 2011, Dr. Ross noted
Plaintiff was being seen regarding his previous diagnosis of
spondyloarthopathy with Crohn's disease with worsening back pain.
(R. 408.)  He recorded that Plaintiff had been hospitalized two
months earlier for severe pain and flaring of Crohn's disease with
bloody stools.  (*Id.*)  He also recorded that Plaintiff was on
Humira which had improved his pain at one time but he reported
worsening pain predominantly in the back lumbar area, sacroiliac
and groin area with symptoms worse in the morning and with
prolonged sitting.  (*Id.*)  Joint exam showed abnormal movement in
the lumbar spine with Schober's test measuring 4 cm, chest

expansion of 5 cm, finger to floor distance of 27 c., and head to wall distance of 0 cm. (R. 409.) Dr. Ross also found that Plaintiff had mild thoracic and lumbar scoliosis and significant paralumbar muscle spasm. (*Id.*) Dr. Ross listed the following problems: spondyloarthropathy with sacroiliitis; Crohn's diease with Crohn's causing inflammatory bowel disease; spondyloarthropathy; severe low back pain unclear whether inflammatory or mechanical; and chronic medication use with Humira. (*Id.*) Dr. Ross noted that "[o]verall it sounds suspicious that Jonathan has inflammatory back symptoms that are persisting and appears to have lost effectiveness of Humira for his spine control. Still there may be some mechanical issues contributing to back symptoms also." (R. 410.) He recommended additional studies including a bone scan to assess the back to determine if there were signs of inflammation. (*Id.*) Dr. Ross added that overall, there were "very limited options in regards to having inflammatory bowel disease and spondyloarthropathy." (*Id.*) He further noted that muscle spasm appeared to be contributing to Plaintiff's symptoms. (*Id.*) Dr. Ross doubted that an MRI would be useful but he had reviewed x-rays done in September 2010 and March 2011 which showed that Plaintiff had sacroiliitis on the left joint more than the right with some space loss and sclerosis, and "no findings of fusion in the lumbar spine or syndesmophyte, so he does not have classic findings of ankylosing spondylitis at this time. Also hip

4

x-rays show only mild inferior space loss in both hips and discuss with him that at this point there is no findings [sic] that indicate need for hip replacement." (*Id.*)

At a follow-up visit on April 7, 2011, Dr. Ross noted that Plaintiff had again been hospitalized two weeks earlier due to severe back pain. (R. 413.) He added that Plaintiff had seen pain management and been given a fentanyl patch and prednisone with improved pain symptoms though he continued to report groin, sacroiliac and hip discomfort with activity. (*Id.*) Dr Ross stated that Plaintiff had "chronic loss of motion in the spine." (*Id.*) He reviewed the bone scan done on March 10, 2011, which was read as abnormal uptake, left side aspect at L5 which Dr. Ross found consistent with degenerative changes. (*Id.*) Physical examination showed tenderness in the lower thoracic area, slight pain on range of motion, the presence of scoliosis, tenderness along the outer aspect of the iliac area bilaterally, good range of motion of the hips, and no peripheral synovitis. (R. 413-14.) His Impression included the notation that Plaintiff "does have previous damage in his SI joints consistent with spondyloarthropathy" but the current cause of his back pain was unclear since the recent bone scan did not show significant uptake in the back" but it was "still possible that some of the symptoms are inflammatory." (R. 414.)

Notes from the October 6, 2011, appointment indicate that Plaintiff was seen for follow-up concerning his history of

sacroiliitis with Crohn's disease and spondyloarthropathy in addition to chronic back pain unrelated to inflammatory process. (R. 500.) Dr. Ross recorded that Plaintiff continued to report daily pain present throughout the day and the Crohn's disease was under control with Humira. (*Id.*) He noted that Plaintiff continued on a fentanyl patch and Percocet from his primary care doctor for pain management although he reported missing work and school because of back discomfort. (*Id.*) Musculoskeletal examination showed pain with range of motion of the lumbar spine, some crepitus of the cervical spine, and back pain with range of motion of the hips. (*Id.*) Dr. Ross listed Plaintiff's problems as low back pain, history of inflammatory bowel disease, spondyloarthropathy that did not appear active, chronic medication use, depression/anxiety, and vitamin D deficiency. (R. 501.) In the Impression and Plan portion of the record, Dr. Ross noted that Plaintiff "does have chronic back pain that does not appear to be related to the current inflammatory process. Other than pain management with analgesics and physical therapy, I do not have any suggestions." (*Id.*)

In November 2011, Plaintiff was seen by orthopaedic surgeon Michael C. Racklewicz, M.D., on referral of his primary care doctor, Janusz Wolanin, M.D. (R. 425.) Dr. Racklewicz noted that Plaintiff was seen for back pain and pain going down into his hips, he had been treated by Dr. Ross for the ankylosing spondylitis for

years, and he was on fentanyl patches, Humira, Percocet, and Zoloft. (*Id.*) Examination showed internal rotation of both hips at 20 degrees and external rotation of 40 degrees with pain more than that with the remainder of exam findings basically normal except for some tenderness to palpation of the spine. (*Id.*) AP of the pelvis showed some minimal sclerosis of the superior margin of both hips which Dr. Racklewicz described as more than he expected in a twenty-seven year old but not enough to warrant a total joint replacement. (*Id.*) He recommended that Plaintiff return to his rheumatologist. (*Id.*)

On January 3, 2012, Plaintiff saw Dr. Wolanin for medication refills for chronic pain. (R. 581.) Dr. Wolanin recorded normal physical examination findings.[1] (R. 582.)

Plaintiff was seen at the Geisinger Wyoming Valley Emergency Department on January 31, 2012, for evaluation of low back pain. (R. 576.) He reported that he had lost his fentanyl patch the night before, it was the second time it happened with that prescription, and he was told his doctor and rheumatologist would not refill it when he called the pharmacy. (*Id.*) Physical examination was normal except for tenderness in the lower lumbar area. (R. 577.) Plaintiff was given hydromorphone and instructed to discuss the problem of the fentanyl patches falling off with his

---

[1] As documented in the record and acknowledged by Plaintiff, Dr. Wolanin routinely recorded normal physical examination findings. (*See* Doc. 5 at 9 n.4.)

treating providers if it continued to happen.  (R. 578.)  The ED
diagnosis was acute exacerbation of chronic back pain and
medication loss.  (*Id.*)

In March 2012, Dr. Wolanin noted that Plaintiff complained of
increased pain over the preceding week and he found sacroiliac
joint tenderness bilaterally.  (R. 571.)  In April 2012, Plaintiff
again complained of increasing back and hip pain but examination
findings were normal.  (R. 569.)

Plaintiff was again seen at the Geisinger Wyoming Valley
Emergency Department on April 24, 2012, for back pain beginning two
days earlier and abdominal pain on the day of the ED visit.  (R.
522.)  Physical examination showed severe tenderness to palpation
of the entire abdomen and severe tenderness to light palpation of
the thoracic, lumbar and sacral spine.  (R. 524.)  Plaintiff was
given dilaudid and appeared well at the time of discharge.  (*Id.*)

The MRI done on May 8, 2012, because of low back pain and
bilateral leg pain showed levoscoliosis and minimal posterior disc
bulge at L5-S1.  (R. 561.)

Plaintiff saw Dr. Ross, his treating rheumatologist, on August
15, 2012, for follow up of his sacroiliitis with Crohn's disease.
(R. 548.)  Dr. Ross noted continued chronic pain with some partial
improvement on Humira and Crohn's partially improved with Humira as
well as some days with increased back pain if he had diarrhea.
(*Id.*)  He also noted that Plaintiff continued with oxycodone from

8

his other physicians and he was on morphine for back pain. (*Id.*) On examination, Dr. Ross found decreased flexion of the lumbar spine and tenderness in the sacroiliac area. (*Id.*) He listed Plaintiff's problems to be spondyloarthropathy, Crohn's disease with inflammatory bowel disease, low back pain, and vitamin D deficiency. (R. 548-49.) Dr. Ross noted that Plaintiff's spondylitis and Crohn's arthritis were as stable as possible with Humira and his other back symptoms required narcotics. (*Id.*)

Plaintiff was seen in the Emergency Department at Geisinger Wyoming Valley on December 24, 2012, with complaints of lower back, hip, and leg pain for the preceding four days. (R. 790.) Plaintiff described the pain as moderate and said it worsened with change in position. (*Id.*) He noted that he had a bloody stool earlier in the day. (*Id.*) Physical examination showed mild tenderness in the entire abdomen, tenderness over the lumbar spine in the L-3, 4, and 5 area, and mild to moderate tenderness of the paralumbar muscles. (R. 791.) The diagnosis was back pain/ankylosing spondylitis. (R. 793.)

On January 7, 2013, Plaintiff saw gastroenterologist Anthar Altaf, M.D. (R. 740.) Physical examination was not remarkable. (*Id.*) Crohn's disease was the primary encounter diagnosis with ankylosing spondylitis of the lumbar region noted as being managed by a rheumatologist. (R. 741.)

Plaintiff had a colon biopsy in February 2013. (R. 822.) It

showed "[c]olonic mucosa with focal minimal crypt distortion [and] [n]o evidence of significant inflammation or dysplasia in the biopsy. (R. 822.)

Plaintiff went to the Geisinger Wyoming Valley Emergency Department on March 28, 2013, with the main complaint of right hand pain resulting from having punched someone. (R. 795.) He also complained of hip pain related to ankylosing spondylitis. (*Id.*) In addition to right hand problems, physical exam showed bilateral sacroiliac joint tenderness. (R. 797.)

At his April 12, 2013, visit with Dr. Altaf, office records indicate Plaintiff had been off Humira for a month due to a change in insurance. (R. 749.) Dr. Altaf noted that Humira was originally prescribed for ankylosing spondylitis, the Crohn's disease had been treated in the past with Prednisone, Plaintiff had been in prolonged remission, and his last colonoscopy was normal. (*Id.*) At the time of the visit, Plaintiff reported that he had lower abdominal pain for two days without diarrhea. (*Id.*) Dr. Altaf found no problems on physical examination but noted that Plaintiff may have been going into a flare of the Crohn's disease because he stopped Humira which had helped the Crohn's. (R. 750.) He prescribed Prednisone. (*Id.*)

Plaintiff was seen at the Geisinger Emergency Department on May 31, 2013, with complaints of pain in the hips, pelvis, and lower back which he described as typical of an exacerbation of his

10

chronic pain. (R. 799.) Plaintiff explained that his pain was well controlled for a while when he was taking Humira but he had stopped taking it when his insurance changed five months earlier. (*Id.*) ED records indicate Plaintiff said he had run out of morphine and oxycodone but understood that these prescriptions could not be refilled by the ED. (*Id.*) Physical exam showed tenderness over the thoracic and lumbar region, bilateral tenderness with movement of the pelvic cradle. (R. 801.) Plaintiff was given IV Zofran and Dilaudid. (*Id.*) Exacerbation of pain related to ankylosing spondylitis was diagnosed. (*Id.*)

On June 13, 2013, rheumatologist Shantanu Bishwal, M.D., saw Plaintiff as a new patient on Dr. Wolanin's referral. (R. 627.) The office record indicates Plaintiff was transitioning from Dr. Ross because of a change in insurance. (*Id.*) Plaintiff reported that he had seen Dr. Altaf for Crohn's disease and had not been on Humira since January 2013 which had caused a flare up of his inflammatory spondyloarthritis. (*Id.*) He noted that he had been diagnosed with Crohn's disease at age ten and the musculoskeletal symptoms began when he was eighteen, adding that methotrexate and sulfasalzine did not help and injections had made the symptoms worse. (*Id.*) Physical examination showed bilateral hip stiffness with internal and external rotation. (R. 629.) Dr. Bishwal's "Problem List as of 6/13/2013 included ankylosing spondylitis of the lumbar region and Crohn's disease. (R. 630.)

On June 25, 2013, Plaintiff went to the Geisinger Emergency Department complaining of acute exacerbation of his chronic pain related to ankylosing spondylitis which started the day before. (R. 803.) He again explained his reason for stopping Humira and noted the subsequent flare of his Crohn's disease but stated that is not what brought him to the ED. (*Id.*) Examination showed diffuse lower lumbar tenderness. (R. 805.) Diagnosis included acute exacerbation of chronic pain, ankylosing spondylitis, and opiate tolerance. (*Id.*) Plaintiff was given MS Contin and his condition improved. (*Id.*)

Plaintiff was seen at the Wyoming Valley Health Care System Emergency Department on July 1, 2013, with complaints of abdominal pain which he rated at ten and described as sharp, diffuse, and constant. (R. 861-62.) Plaintiff explained his history of Crohn's disease and said he was out of oxycodone and morphine and it was too early for the prescriptions to be refilled according to the pharmacy and Dr. Wolanin. (R. 861, 863.) The ED record states that Plaintiff appeared in severe distress due to pain and was poorly groomed. (R. 862, 864.) Examination findings included abdomen diffusely tender with moderate intensity. (R. 864.) An IV was started and Plaintiff was given a morphine injection. (R. 862.) A CT scan of the abdomen and pelvis showed thickening of terminal ileum consistent with Crohn's disease; moderate fecal content within the colon; no evidence of bowel obstruction; and

nonspecific minimal free fluid in the right side of the pelvis.
(R. 871.)

At his July 11, 2013, visit with Dr. Bishwal, physical examination again showed bilateral hip stiffness with internal and external rotation.  (R. 637.)  Dr. Bishwal's "Impressions" were Crohn's Disease, ankylosing spondylitis, and positive HLA B27.[2] (*Id.*)  His plans included precertifying Humira after he received PPD results from Dr. Wolanin's office.  (*Id.*)

Plaintiff went to the Wyoming Valley Health Care System Emergency Department on August 23, 2103, complaining of pain in his hips, back, and groin which he rated as eight out of ten.  (R. 852, 853.)  Plaintiff said he was out of oxycodone and could not refill the prescription until August 31st.  (R. 854.)  Physical examination was normal.  (R. 855.)  Doctor Notes indicate that the case was discussed with Dr. Wolanin who approved giving Plaintiff a few opioid pills for over the weekend.  (R. 855.)

On April 1, 2014, Plaintiff reported to Dr. Altaf that he had Crohn's flares every week, during the flare he had constipation and had to stand to move his bowel, and sometimes the stool had blood in it.  (R. 765.)  Noting that the last colonoscopy was normal, Dr. Altaf also noted that Plaintiff was on Humira which he did not feel

---

[2]  Positive HLA B27 means HLA B27 was found in the patient's blood and the person has a higher-than-average risk of developing or having certain autoimmune diseases, such as ankylosing spondylitis, reactive arthritis, and inflammatory bowel disease. https://www.urmc. rochester.edu/encyclopedia/content.

was helping the ankylosing spondylitis.  (*Id.*)  Physical examination was normal.  (R. 766.)  Dr. Altaf noted that he needed to evaluate the small intestine and would order CT enterography. (*Id.*)  He also noted that Plaintiff's chronic constipation was unresponsive to over-the-counter treatment.  (*Id.*)

April 10, 2014, CT Enterography showed no evidence of active bowel disease with note made of a large stool burden.  (R. 648.)

Plaintiff saw Dr. Bishwal on April 29, 2014, for follow up on ankylosing spondylitis and Crohn's disease.  (R. 649.)  Plaintiff reported increased back and hip pain.  (*Id.*)  On muscloskeletal examination Dr. Bishwal found bilateral hip stiffness with internal and external rotation.  (R. 651.)  Because Plaintiff felt that Humira had lost efficacy, Dr. Bishwal considered Enbrel as a possible alternative.  (*Id.*)

Lumbosacral spine x-rays of May 5, 2014, showed mild scoliosis and colon consistent with constipation.  (R. 654.)  Sacroiliac joint studies showed mild sclerosis involving the iliac side of the sacroiliac joints bilaterally with no evidence of joint fusion or erosions.  (R. 656.)

On September 11, 2014, Dr. Bishwal again found bilateral hip stiffness with internal and external rotation.  (R. 662.)  He planned to try Cimzia as an alternative to Humira.  (*Id.*) Plaintiff reported that he had intermittent abdominal pain especially when constipated and he took Miralax as needed.  (R.

14

668.)  He also noted that he was prescribed Cimzia which was
approved in September but he had not received it yet and he planned
to contact the pharmacy.  (*Id.*)

**B. Opinion Evidence**

In addition to Dr. Bishwal's records, Plaintiff points to the
opinions of Dr. Ross and Dr. Wolanin in support of his argument
that the ALJ erred in finding he had no severe impairment or
combination of impairments.  (*See* Doc. 9 at 27-29.)  Included in
the "Relevant Medical Evidence" portion of Plaintiff's brief is Dr.
Wolanin'a November 25, 2012, Multiple Impairment Questionnaire, a
reference to another form opinion completed by Dr. Wolanin, a
reference to a note from Dr. Ross dated May 29, 2012, and Dr.
Altaf's Gastrointestinal Disorders Impairment Questionnaire dated
April 1, 2015.  (Doc. 9 at 5-6 & n.6, 11, 13-14 (citing R. 502,
585-90, 591, 673-78).)  In addition to the opinions of Dr. Wolanin
and Dr. Ross, ALJ Hardiman considered the opinion of Disability
Determination Service reviewing consultant Theodore Waldron, D.O.,
relevant to Plaintiff's physical impairments.  (R. 47 (citing Exs.
1A/6, 2A/6 [R. 126, 136]).)

On January 22, 2012, Dr. Wolanin addressed a form letter "To
Whom It May Concern" in which he indicated that it was his opinion
that Plaintiff was totally disabled and drug or alcohol use was not
a material cause of the disability.  (R. 591.)  He checked the box
indicating "My patient's use of drugs and/or alcohol is a symptom

of his condition, and/or is a form of self medication.  The
disability is independent of any use." (*Id.*)  In an additional
comment, Dr. Wolanin noted that Plaintiff was "maintained on
narcotic medications to try and alleviate some of his pain.  His
condition is permanent and specialists have agreed the medication
is necessary." (*Id.*)

On February 29, 2012, Disability Determination Service
consultant Theodore Waldron, D.O., completed a Physical Residual
Functional Capacity Assessment.  (R. 126-28, 136-38.)  He concluded
the following:  Plaintiff could occasionally lift and/or carry
twenty pounds and frequently lift and/or carry ten pounds; he could
stand and/or walk for a total of four hours and sit for at total of
about six hours in an eight-hour day; he could never climb
ladders/ropes/scaffolds; and he could occasionally climb
ramps/stairs, balance, stoop, kneel, crouch, and crawl.  (R. 126-
27, 136-37.)  Dr. Waldron explained that the postural limitations
were based on Plaintiff's reported history of ankylosis
spondilitis, prior sacroiliitis, and vitamin D deficiency.  (R.
127, 137.)  Dr. Waldron also found that Plaintiff had environmental
limitations and needed to avoid concentrated exposure to all
identified conditions.  (R. 127-28, 137-38.)  The Disability
Determination Explanation forms containing the RFC assessments
indicate that Plaintiff had the severe impairments of spine
disorders and inflammatory bowel disease as well as affective

disorders which were non severe.  (*Id.*)

On May 29, 2012, Dr. Ross wrote a letter "To Whom It May Concern" in which he opined that Plaintiff was unable to work for at least twelve months because of his diagnosis of low back pain, chronic sacroiliitis, and Crohn's disease.  (R. 502.)

On November 25, 2012, Dr. Wolanin completed a Multiple Impairment Questionnaire in which he identified diagnoses of Crohn's disease, ankylosing spondylitis, depression, anxiety, and scoliosis of the lumbar spine.  (R. 585.)  He noted a fair prognosis and indicated "all included" when asked to identify the positive clinical findings that demonstrate and/or support his diagnoses and the laboratory/diagnostic test results which demonstrate and/or support his diagnoses.  (R. 585-86.)  Dr. Wolanin identified chronic pain (hips, lumbar spine, and lower abdomen) vitamin D deficiency, and chronic fatigue as Plaintiff's main symptoms and opined that the symptoms were consistent with his diagnoses.  (R. 586.)  He reported that the pain (rated as 8/10) could not be completely relieved with medication without unacceptable side effects.  (R. 587.)  Dr. Wolanin opined that Plaintiff could sit for 0-1 hours and stand/walk for one-half hour in an eight-hour day and he would have to get up and move around every fifteen minutes.  (*Id.*)  He also found that Plaintiff could occasionally lift and carry up to twenty pounds and he was limited in doing repetitive reaching, handling, fingering or lifting due to

17

pain and problems with his hips and lower back.  (R. 588.)  Dr. Wolanin opined that Plaintiff could not hold full time employment due to constant pain and the level of narcotics needed to try and control the pain.  (R. 589.)  He also opined that Plaintiff was unable to push, pull, kneel, bend, or stoop.  (*Id.*)  Finally, Dr. Wolanin noted his description of symptoms and limitations identified in the form applied beginning in July 2011.  (*Id.*)

In a letter dated November 25, 2012, Dr. Wolanin said that several specialists agreed with Plaintiff's ankylosing spondylitis diagnosis and agreed that nothing could be done for him.  (R. 583.) He noted that Plaintiff was in constant pain despite being on narcotic pain medication.  (R. 584.)  Dr. Wolanin opined that Plaintiff was disabled and his conditions were not improving.  (R. 584.)

On April 1, 2015, Dr. Altaf completed a Gastrointestinal Disorders Impairment Questionnaire.  (R. 673-78.)  His diagnoses were Crohn's disease, IBS, and constipation.  (R. 673.)  Dr. Altaf reported a good prognosis and positive clinical findings of abdominal pain and cramps.  (R. 673-74.)  He identified the supporting laboratory and diagnostic test results to be abnormal serology of IBD with the diagnosis made before Dr. Altaf began treating Plaintiff and Plaintiff's main symptoms to be abdominal pain and constipation.  (R. 674.)  Dr. Altaf noted that physical impairment information should be obtained from rheumatology or

primary care but said that Plaintiff experienced generalized moderate abdominal pain with constipation. (R. 675.) He also opined that Plaintiff was not a malingerer. (R. 676.)

## C. *ALJ Decision*

In her November 3, 2015, decision, ALJ Hardiman determined that Plaintiff had the following medically determinable impairments: Crohn's disease/inflammatory bowel disease/IBS with constipation; abdominal pain; status post 5th metatarsal fracture; right hand contusion; syncope; chronic pain; chronic low back pain; low back pain; mild levoscoliosis of the spine/bulge L5/S1; spondyloarthropathy; ankylosing spondylosis; adjustment disorder; cannabis abuse; history of alcohol abuse; depressive disorder; and anxiety disorder. (R. 32.) She also found that Plaintiff did not have a severe impairment or combination of impairments. (*Id.*) On this basis, ALJ Hardiman concluded that Plaintiff had not been under a disability as defined in the Social Security Act from December 21, 2011, through the date of the decision. (R. 49.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[3] It is necessary for the

---

[3] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of

---

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step two of the sequential evaluation process when the ALJ found that Plaintiff did not have a severe impairment or combination of impairments.  (R. 32.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for
> adjudication; rather, our decisions make
> clear that determination of the existence *vel
> non* of substantial evidence is *not* merely a

21

> quantitative exercise. A single piece of
> evidence will not satisfy the substantiality
> test if the Secretary ignores, or fails to
> resolve, a conflict created by countervailing
> evidence. Nor is evidence substantial if it
> is overwhelmed by other evidence--
> particularly certain types of evidence (e.g.,
> that offered by treating physicians)--or if
> it really constitutes not evidence but mere
> conclusion. *See* [*Cotter*, 642 F.2d] at 706
> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted). The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative

22

evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  However, the ALJ need not undertake an exhaustive discussion of all the evidence.  *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions.  *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

As set out above, Plaintiff asserts the Acting Commissioner's

23

determination is error for the following reasons: 1) the ALJ did not comply with the Appeals Council's order directing her to obtain evidence from a medical expert; and 2) the ALJ's conclusion that Plaintiff had no severe impairment or combination of impairments is not supported by substantial evidence. (Doc. 9 at 24.)

## A. Appeals Council Order

Plaintiff's first argument focuses on the Appeals Council's remand order which directed the ALJ to obtain additional evidence about Plaintiff's impairments, obtain evidence from a medical expert to clarify the nature and severity of his impairments, and give further consideration to the treating source opinions. (Doc. 9 at 24-25.) Because ALJ Hardiman did not obtain evidence from a medical expert to clarify the nature and severity of his impairments, Plaintiff maintains she committed harmful error. (*Id.* at 24-27.) Defendant responds that the Appeals Council rejected Plaintiff's argument when he sought review of the ALJ's current decision, only the current decision is before this Court for review, and this Court does not have authority to review intermediate agency actions. (Doc. 10 at 5-6 (citations omitted).)

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of Social Security. Social Security regulations address an ALJ's obligation upon remand from the Appeals Council: "The administrative law judge shall take any action that is ordered by the Appeals Council and may take any

24

additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b), 416.1477(b).

As cited by Defendant, some district courts within the Third Circuit and elsewhere have concluded that review of the ALJ's compliance with the Appeals Council's remand order is outside the purview of consideration on appeal of the Commissioner's final decision. (Doc. 10 at 5-6 (citing *Pearson v. Colvin*, No. 14-4666, 2015 WL 9581749, at *4 (D.N.J. Dec. 30, 2015 (citing *Bull v. Comm'r of Social Security*, No. 12-183, 2013 WL 499248, at *8 (E.D. Va. Jan. 3, 2013)); *Davenport v. Colvin*, No. 14-828, 2016 WL 1128530, at *9 (D. Del. Mar. 22, 2016)).) Although Plaintiff did not file a reply brief and thus did not cite any contrary authority, Defendant does not acknowledge that several decisions within the Third Circuit have concluded otherwise, finding that the decision was subject to remand when the ALJ failed to adhere to the Appeals' Council's order. *See*, *e.g.*, *Wolfe v. Comm'r of Social Security*, Civ. A. No. 12-6083, 2013 WL 5328343, at *8-9 (D.N.J. Sept. 20, 2013); *Allen v. Astrue*, Civ. A. No. 06-CV-018, 2007 WL 1276933, at *3-4 (E.D. Pa. May 1, 2007); *Thompson v. Barnhart*, Civ. A. No. 05-395, 2006 WL 709795, at *11-12 (E.D. Pa. Mar. 15, 2006); *Lok v. Barnhart*, Civ. A. No. 04-3528, 2005 WL 2323229, at *6-7 (E.D. Pa. Sept. 19, 2005); *but see Bogia v. Colvin*, Civ. A. No. 13-1793, 2015 WL 1419118, at *9 (D. Del. Mar. 25, 2015); *Ford v. Colvin*, Civ. A. No. 1:14-CV-01046, 2015 WL 4608136, at *9 (D. Del. July 31, 2015).

*Wolfe* relied on *Johnson v. Comm'r of Social Security*, 529 F.3d 198 (3d Cir. 2008), for the proposition that an ALJ's failure to do so constitutes reversible error. 2013 WL 5328343, at *8. In *Johnson*, the Circuit Court addressed the plaintiff's argument that the ALJ completely failed to follow a specific and direct mandate from the Appeals Council as required by 20 C.F.R. § 404.977(b). 529 F.3d at 205. The Court did not discount the plaintiff's argument because compliance with the Appeals Council's order was not reviewable by the district court but, rather, concluded that the ALJ complied with the Appeals Council's order. *Id.*

While none of the district court cases are binding precedent and the Third Circuit *Johnson* decision does not squarely address the issue, the Court declines to find Plaintiff's claimed error meritless on the broad basis asserted by Defendant. Rather, the Court concludes that the harmless error principle applicable to Social Security appeals should be considered. *See Rutherford*, 399 F.3d at 553 (holding error that would not affect the outcome of the preceding was harmless). Where the ALJ substantially complies with the Appeals Council's order and/or the Court is satisfied that the ALJ has otherwise rectified the problem identified by the Appeals Council, remand to the Commissioner would not be required because the error would be deemed harmless.[4]

---

[4] *See Thompson*, 2006 WL 709795, at *11 (citing *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989); quoting *Mefford v. Gardner*, 383 F.2d 748, 758-59 (6th Cir. 1967) ("[i]f the cause is remanded with

Here Plaintiff specifically asserts harm related to the ALJ's failure to obtain evidence from a medical expert thereby violating the Appeals Council's order.[5]  (Doc. 9. at 26.)  Plaintiff points to his second claimed error regarding the severity of his impairments, specifically Dr. Wolanin's finding that his impairments were both severe and work preclusive.  (*Id.*)  Contending that an expert medical opinion may have bolstered Dr. Wolanin's opinion, Plaintiff concludes that a medical expert's testimony likely would have changed the outcome of the case.  (*Id.* at 27.)  Because the harm identified by Plaintiff relates to his second claimed error, the Court will proceed accordingly.

**B.  *Step Two***

Plaintiff's second claimed error is that the ALJ's finding that he did not have a severe impairment or combination of impairments at step two was not supported by substantial evidence. (Doc. 9 at 27.)  Defendant does not directly respond to Plaintiff's assertion regarding severity but avers that Plaintiff relies on the

---

specific directions, further proceedings in the trial court or agency from which appeal is taken must be in substantial compliance with such directions.")).

[5]  Often the circumstances of a case will make clear to the reviewing court that an error was harmful and "nothing further need be said."  *Dries v. Colvin*, Civ. A. No. 4:16-CV-01014, 2017 WL 4936017, at *6 (M.D. Pa. May 3, 2017).  However, "if the circumstances are not clear the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Id.* (citing *Shineski v. Sanders*, 556 U.S. 396, 410 (2009).

opinions of Drs. Ross and Wolanin in support of his second claimed error and "[b]ecause the ALJ properly considered the opinions of Drs. Ross and Wolanin, Plaintiff's argument should be rejected." (Doc. 10 at 8 (citations omitted).)  The Court concludes that this matter must be remanded because the ALJ's determination that Plaintiff does not have a severe impairment or combination of impairments is not supported by substantial evidence.

Setting out the five-step sequential process, 20 C.F.R. § 404.1520(a)(4)(ii) provides that the medical severity of impairments is considered at step two: "If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."  Section 404.1527(c) states that "[y]ou must have a severe impairment.  If you do not have any impairment which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."  "Basic work activities" include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and understanding, carrying out, and remembering simple instructions.  20 C.F.R. § 404.1521(b).

As explained in *McCrea v. Comm'r of Social Security*, 370 F.3d 357 (3d Cir. 2004),

28

[t]he burden placed on an applicant at step
two is not an exacting one.  Although the
regulatory language speaks in terms of
"severity," the Commissioner has clarified
that an applicant need only demonstrate
something beyond "a slight abnormality or a
combination of slight abnormalities which
would have no more than a minimal effect on
an individual's ability to work."  SSR 85-28,
1985 WL 56856, at *3; *see also Newell* [*v.
Comm'r of Social Security*], 347 F.3d [541],
546 [(3d Cir. 2003)] ("If the evidence
presented by the claimant presents more than
a 'slight abnormality,' the step-two
requirement of 'severe' is met, and the
sequential evaluation process should
continue.")  Any doubt as to whether this
showing has been made is to be resolved in
favor of the applicant.  *Newell*, 347 F.3d at
546-47.  In short, "[t]he step-two inquiry is
a *de minimis* screening device to dispose of
groundless claims."  *Id.* at 546; *accord
McDonald* [*v. Sec'y of Health and Human
Services*], 795 F.2d [1118,] 1123 [(1ˢᵗ Cir.
1986)].

     Due to this limited function, the
Commissioner's determination to deny an
applicant's request for benefits at step two
should be reviewed with close scrutiny.  We
do not suggest, however, that a reviewing
court should apply a more stringent standard
of review in these cases.  The Commissioner's
denial at step two, like one made at any
other step in the sequential analysis, is to
be upheld if supported by substantial
evidence on the record as a whole.  *See
Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d
Cir. 1992) ("Neither the district court nor
this court is empowered to weigh the evidence
or substitute its conclusions for those of
the fact-finder.")  Instead, we express only
the common-sense position that because step
two is to be rarely utilized as a basis for
the denial of benefits, *see* SSR 85-28, 1985
WL 56856, at *4 ("Great care should be
exercised in applying the not severe
impairment concept."), its invocation is

certain to raise a judicial eyebrow.

370 F.3d at 360-61. SSR 85-28 further provides that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." 1985 WL 56856, at *4.

ALJ Hardiman purported to be able to determine definitively that Plaintiff did not have a severe impairment or combination of impairments and, therefore, she did not proceed beyond step two. (R. 32-49.) In doing so she conducted far more than the *de minimis* screening contemplated by *Newell*. 347 F.3d at 546. The "limited function" of step two explained in *McCrea*, 370 F.3d at 360, here entailed a fifteen page analysis in which the ALJ assigned limited weight to all opinions related to physical impairments, including that of the Disability Determination Service consulting physician who opined that Plaintiff had severe impairments of spine disorders and inflammatory bowel disease (R. 124, 134).[6] (R. 34-49.) In the context of her conclusion concerning the "lack of establishment of a medically determinable severe impairment," ALJ Hardiman

---

[6] ALJ Hardiman stated that she considered the DDS consulting physician's opinion "in making her determination concerning the claimant's residual functional capacity." (R. 47.) Rather than a step two consideration, residual functional capacity is a determination made between step three and step four of the sequential evaluation process. 20 C.F.R. §§ 404.1520(e), 416.920(e).

referenced her evaluation of medical opinions and stated that it was

> the Commission's longstanding policy that an Administrative Law Judge (ALJ) may reach an [sic] determination as to the establishment of a medically determinable severe impairment without outside medical expert review of each fact incorporated into the decision. Although Administrative Law Judges are required to consider existing state agency reports and reliance on state agency, consulting, and treating physician' opinions is common (See 20 C.F.R. Sections 404.1527(f), 416(f)), the regulations do not require ALJ's to seek outside assistance. See 20 C.F.R. Sections 404.1546(c), 404.1527(e), 416.946(c), 416.927(e); Social Security Rule 96-5.

(R. 48.)

ALJ Hardiman's assessment is problematic for several reasons. First, although she states that she is not required to seek outside assistance to establish the severity of an impairment, the statement fails to acknowledge that the Appeals Council directly ordered her to do so when it required upon remand that she "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's impairments (20 CFR 404.1527(e) and 416.927(e)) and Social Security Ruling 96-6p)." (R. 161-62.) Second, ALJ Hardiman sights no evidence of record that would be the substantial equivalent of expert medical clarification on the issue of severity of Plaintiff's impairments. Third, in the quoted paragraph, ALJ Hardiman links her conclusion regarding the lack of a severe impairment or combination of impairments to her review of

opinion evidence which, with one limited exception (Dr. Wolanin's January 14, 2015, letter opinion (R. 672)), is not evidence entered into the record after the ALJ's November 3, 2015, Decision or after the Appeals Council's order.[7]  (*See* R. 45-47, 143-59, 160-62.) Notably, the Appeals Council did not find these opinions or the record evidence sufficient to provide substantial evidence on the issue of severity.  (*See* R. 161-62.)  Thus, the Court finds no equivalent of the required "evidence from a medical expert" to clarify the nature and severity of the impairments (R. 162) in ALJ Hardiman's discussion of the issue or in an independent review of the record.  Further, the Court cannot find this error harmless. Not only is there not substantial compliance with the Appeals Council's order as discussed above, the Court cannot conclude that ALJ Hardiman's step two analysis is otherwise supported by substantial evidence both because of the framework employed and because of deficits in the evidentiary review.  Therefore, upon remand, "evidence from a medical expert to clarify the nature and severity of [Plaitniff's] impairments" is required.  (*See* R. 161-62.)  The need for this clarification is particularly important

---

[7]  ALJ Hardiman cited Dr. Wolanin's January 14, 2015, letter opinion.  (R. 45 (citing Ex. 33F [R. 672]).)  Dr. Wolanin stated that he had been Plaintiff's treating doctor for nine years and his multiple, chronic, degenerative conditions, including ankylosing spondylitis, rendered him unable to maintain regular employment. (R. 672.)  The ALJ correctly noted that there was an issue with this opinion in that Dr. Wolanin's treating records covered a period only through 2012.  (R. 45.)

because clinical findings and symptoms related to impairments characterized by flare-ups such as those identified in the record here will not necessarily be found on stationary periodic examinations conducted when the individual is not experiencing a flare. *See Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); *Dix v. Sullivan*, 900 F.2d 135 (8th Cir. 1990); *see also Halloran v. Berryhill*, Civ. A. No. 3:17-CV-11, ---F. Supp. 3d---, 2017 WL 5593286, at *11 (M.D. Pa. Nov. 21, 2017). Therefore, the fact that findings and symptoms otherwise documented in the record are not regularly evident on examination should be considered in the context of the medically recognized nature of the impairment. *Id.*

The ALJ's symptom analysis warrants reconsideration on additional grounds. Overall, ALJ Hardiman found Plaintiff's complaints of pain unsupported by the record and found no evidence that his physical impairments imposed any limitations on his ability to perform work related activities. (R. 35-43, 45-47.) In her introduction to consideration of Plaintiff's complaints of pain, ALJ Hardiman stated that

> pain and other subjective complaints are not medically determinable impairments. They are and remain purely subjective complaints. The diagnosis of a purely subjective complaint does not convert the purely subjective complaint into a medically determinable impairment. To the contrary, it remains a subjective complaint. The diagnosis of a subjective complaint is merely a descriptor diagnosis. As such, these diagnoses are not medically determinable impairments. Subjective complaints such as pain, are

33

> considered only when evaluating the
> claimant's medically determinable severe
> impairments. Subjective complaints alone
> cannot establish the existence of a medically
> determinable impairment nor can they support
> the finding of disability without
> demonstrated medically acceptable signs or
> laboratory findings to support the same.

(R. 34-35.) The framework set out by the ALJ is not consistent with applicable Social Security provisions in that she stated "[s]ubjective complaints such as pain, are considered only when evaluating the claimant's medically determinable *severe* impairments" (R. 34 (emphasis added)) where the language in the provisions provides that subjective symptoms, including pain, related to "*medically determinable* impairment[s]" that could reasonably be expected to cause pain will be evaluated, 20 C.F.R. §§ 404.1529, 416.929 and SSR 96-7p, 1996 WL 374186 (emphasis added). More specifically, symptoms such as pain "are considered in making a determination as to whether your impairments or combination of impairment(s) is severe." 20 C.F.R. §§ 404.1529(d)(1), 416.929(d)(1); *see also* SSR 96-7p, 1996 WL 374186, at *1, 3. ALJ Hardiman found that Plaintiff had medically determinable impairments that could reasonably be expected to produce alleged symptoms and also found that Plaintiff was not entirely credible regarding the limiting effects of his symptoms. (R. 33.) The juxtaposition of the ALJ's finding that Plaintiff had medically determinable impairments which could cause his symptoms with her statement that complaints of pain were only considered

when evaluating severe impairments and her finding that Plaintiff did not have any severe impairment or combination of impairments leads the Court to question the efficacy of her analysis. This should be clarified upon remand.

The Court recognizes that ALJ Hardiman's discussion is extensive and she notes that certain aspects of the record are inconsistent with Plaintiff's assertions of chronic pain, including citation to many examinations which resulted in normal findings being recorded. (*See* R. 34-39.) However, viewing the record as a whole, these findings do not provide adequate support for the conclusion that Plaintiff has no severe impairment or combination of impairments from the onset date through November 3, 2015, the date of her decision. In addition to the deficiencies noted previously, ALJ Hardiman did not discuss probative evidence found in the record. She reviewed Dr. Ross's findings to include pain with range of motion of the lumbar spine, some crepitus of the cervical spine, back pain with range of motion of the hips, decreased flexion of the lumbar spine, and tenderness in the sacroiliac area.[8] (R. 46.) ALJ Hardiman went on to note there was no evidence that Dr. Ross had been a treating source since 2012 and the balance of the records during and after this period by other medical providers do not confirm or report Dr. Ross's findings.

---

[8] ALJ Hardiman does not reference Dr. Ross's notation that there were "very limited options in regards to having inflammatory bowel disease and spondyloarthropathy." (R. 410.)

(R. 47.) ALJ Hardiman mistakenly states that Plaintiff had not been seen by any rheumatologis since 2012. (R. 46.) She does not acknowledge treatment by Dr. Bishwal, the rheumatologist who began treating Plaintiff when he transitioned to Geisinger in June 2013. (*See* R. 627-29.) ALJ Hardiman therefore does not consider Dr. Bishwal's continuous physical examination finding (through September 2014) that Plaintiff had bilateral hip stiffness with internal and external rotation. (*See* R. 629, 637, 651, 662.) In that these clinical findings may be objective medical evidence relevant to making a reasonable conclusion about the intensity and persistence of symptoms, including pain, and their effects on the ability to work, *see* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), Dr. Bishwal's records are probative evidence which must be considered. *See Burnett*, 220 F.3d at 119-20. Because ALJ Hardiman has not done so, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky*, 606 F.2d at 406. Thus, remand is required for consideration of the probative evidence not addressed in the November 3, 2015, Decision.

Defendant's argument that the ALJ properly evaluated the opinions of Dr. Wolanin and Dr. Ross (Doc. 10 at 8-13) is not persuasive on the issue of severity. For the reasons discussed previously, without the addition of "evidence from a medical expert

36

to clarify the nature of and severity" of Plaintiff's impairments (R. 162), the "little weight" assigned the opinions (R. 46, 47) does not show that the substantial evidence requirement has been satisfied.

Because remand is required on the bases identified above, the Court also notes that consideration of another aspect of the Decision is warranted. ALJ Hardiman does not credit providers' reports of pain on palpation as more than subjective complaints, and she often references drug seeking behavior in this context. (*See*, *e.g.*, R. 40.) Although Plaintiff sought refills of narcotic medications at some ED visits and at others noted that he had run out of his pain medication before the prescription could be refilled (*see*, *e.g.*, R.576-77, 799-801, 861-63), no ED record identified suspected drug-seeking behavior rather than legitimate complaints of pain and no treating physician records contain any direct or inferential delegitimazation of Plaintiff's subjective complaints or note suspected exaggeration of responses to physical examination stimuli. Further, Dr. Altaf specifically opined that Plaintiff was not a malingerer. (R. 676.) The ALJ's analysis infers that ongoing treatment for pain is dubious from a medical necessity standpoint, but this inference may constitute a questionable lay opinion based on the lack of any such inference in the record. Because remand is required for reasons discussed in the text, this issue should also be further developed and explained

upon remand.

## **V. Conclusion**

For the reasons discussed above, the Court concludes Plaintiff's appeal is properly granted.[9]  This matter is remanded to the Acting Commissioner for further consideration consistent with this opinion.  An appropriate Order is filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: April 3, 2018

---

[9]  The Court emphasizes that this determination goes only to whether the ALJ's conclusions at step two are supported by substantial evidence.  With a decision at this early stage of the sequential evaluation process, the Court does not make any findings about Plaintiff's ability to satisfy his burden at later stages of the process and on the ultimate question of disability under the Act.